12-1744-cv
Johnson v. Priceline.com, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

―――――――――

August Term, 2012

(Argued: December 4, 2012      Decided: March 27, 2013)

Docket No. 12-1744-cv

―――――――――

LEE E. JOHNSON, JOEY MARIE KELLY, on behalf
of themselves and all others similarly situated,

*Plaintiffs-Appellants*,

v.

PRICELINE.COM, INC.,

*Defendant-Appellee*.

―――――――――

Before:
        CABRANES and RAGGI, *Circuit Judges*, and RAKOFF, *District Judge*.[*]

―――――――――

On appeal from a judgment of the United States District Court for the District of

Connecticut (Arterton, *J.*), dismissing state law claims for breaches of fiduciary duty and

contract, as well as unfair trade practices, plaintiffs challenge the determination that, as a

matter of law, defendant Priceline.com is not a fiduciary of consumers who use its "Name

Your Own Price" booking service.

AFFIRMED.

―――――――――

[*] Judge Jed S. Rakoff of the United States District Court for the Southern District of
New York, sitting by designation.

HOWARD B. STRAVITZ, University of South Carolina Law Center, Columbia, South Carolina (Matthew S. Hirsch, Hirsch Law LLC, Trumbull, Connecticut, *on the brief*), *for Plaintiffs-Appellants.*

THOMAS D. GOLDBERG (Matthew E. Smith, *on the brief*), Day Pitney LLP, Stamford, Connecticut, *for Defendant-Appellee.*

Kirk D. Tavtigian, Law Offices of Kirk D. Tavtigian LLC, Avon, Connecticut; John Pagliaro, Martin J. Newhouse, of Counsel, New England Legal Foundation, Boston, Massachusetts, *for Amicus Curiae New England Legal Foundation, in support of Defendant-Appellee.*

REENA RAGGI, *Circuit Judge*:

Plaintiffs Lee Johnson and Joey Marie Kelly initiated this putative class action in the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*), against defendant Priceline.com, Inc. ("Priceline"), seeking compensatory, punitive, and equitable relief for alleged breaches of fiduciary duty and contract, as well as a violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), see Conn. Gen. Stat. § 42-110b, all arising from Priceline's alleged failure to disclose to users of its "Name Your Own Price" booking service that a successful bid for a hotel room will generally exceed the amount Priceline itself compensates the hotel vendor, with Priceline retaining the difference as profit. In appealing from a judgment of dismissal, plaintiffs now submit that the district court erred in concluding that, as a matter of law, Priceline did not stand in a fiduciary relationship to users of its Name Your Own Price service, without which there was no obligation to make

this disclosure.  Like the district court, we conclude that plaintiffs fail as a matter of law to plead a fiduciary relationship and, accordingly, affirm the challenged judgment.[1]

## I.    Background

The following facts are derived from plaintiffs' amended class action complaint, as supplemented by materials integral to that pleading and matters susceptible to judicial notice. See, e.g., Roth v. Jennings, 489 F.3d 499, 509–10 (2d Cir. 2007).

### A.    Priceline's "Name Your Own Price" Service

Priceline, a Delaware corporation with headquarters in Norwalk, Connecticut, is a leading online retail vendor of travel accommodations, including hotel rooms, airfare, rental cars, and vacation packages.  Priceline employs three business models to offer consumers hotel room reservations through the Priceline.com website.  The first two models, which are not at issue here, allow the consumer to purchase a room at a particular hotel and at a particular advertised price set by Priceline.  Under the "agency" model, Priceline books a room for a consumer at a hotel chosen by the consumer and charges the hotel a fee for its service.  Under the "merchant" model, hotels provide Priceline with prices they will accept for bookings; Priceline offers consumers rooms at these hotels for a somewhat higher rate and retains the difference as its profit.  At issue here is a third model, marketed to consumers as the Name Your Own Price service, which invites consumers to "bid" for hotel rooms.

---

[1] Plaintiffs acknowledge that their breach of contract and CUTPA claims are "wholly dependent on the breach of fiduciary duty claim."  Appellants' Br. 8.  Accordingly, there is no need to consider any issue other than fiduciary relationship on this appeal.

3

A consumer who uses the Name Your Own Price service does not specify a particular hotel. Rather, the consumer indicates the date for which he seeks a hotel reservation, the desired neighborhood or geographic area for the hotel within the destination city (e.g., Times Square or Upper East Side in New York City), and the minimum "star" quality acceptable for the hotel. After setting these parameters, the consumer places his "bid," reflecting the amount (absent taxes and fees) that he is willing to pay for a hotel satisfying the chosen criteria. The consumer is advised that "[i]f Priceline accepts your price," it will book a reservation for him at a hotel "with an equal or higher star level than you requested." Priceline.com website disclosure, "Important Information," J.A. 163. The consumer then reviews the total charge (which adds estimated taxes and a service fee to the bid price) and enters payment information before clicking "book now." At that point, Priceline uses an algorithm to search a proprietary inventory of discounted hotel rooms for a matching accommodation and, usually within a minute, reports to the consumer whether his bid was accepted and, if so, the identity of the hotel where a reservation has been booked.

The hotel rates available to Priceline in its Name Your Own Price model are often far lower than publicly available rates. Priceline markets its Name Your Own Price service to consumers looking to "save even more" than with its other two reservation models, reporting possible savings of "up to 50% over other leading online sites." Priceline.com home page, J.A. 158. Indeed, plaintiffs acknowledge that the Name Your Own Price service "allows customers to name the price they would pay for travel services at discounted prices." Compl. ¶ 11.

4

Nevertheless, the Name Your Own Price model is designed so that "in almost all transactions" Priceline will not accept a bid unless it can locate a hotel room satisfying a customer's parameters at a rate <u>lower</u> than the bid amount, with Priceline keeping the spread as a profit in addition to its stated service fee. <u>Id.</u> ¶ 16. This practice is not explicitly disclosed to consumers during the bidding process. At best, a fine-print statement advises consumers that Priceline retains the balance of charges paid for taxes and service fees on Name Your Own Price transactions "<u>as part</u> of the compensation for our services and to cover the costs of your reservation," Priceline User Agreement, "Charges for Taxes and Service Fees," J.A. 133 (emphasis added), implying to the careful reader that Priceline's compensation has other "parts." At the same time, however, Priceline has not kept its Name Your Own Price fee structure hidden. It was disclosed in the company's initial public offering prospectus and discussed by the company's founder in a nationally televised interview.

B.  Plaintiffs' Amended Complaint

In their amended class action complaint, filed June 24, 2011, plaintiffs Johnson and Kelly, both residents of Illinois, allege that they used Priceline's Name Your Own Price service to make reservations at four-star hotels. Johnson's bid of $125 secured him a reservation at the Omni Hotel in Richmond, Virginia. Kelly's bid of $150 secured her a reservation at the Sheraton Hotel in Boston, Massachusetts. Although both bookings conformed to plaintiffs' specified parameters for the amounts bid, plaintiffs claim that they were injured by Priceline's failure to disclose that it was paying the hotels less than

5

plaintiffs' bids for the reserved rooms. Specifically, plaintiffs allege that Priceline represented itself "as a travel agent with the client's best interests in mind," Compl. ¶ 17, as evidenced by advertising in which the actor William Shatner appears alternatively to use threats and "seductive powers" to persuade hotels to discount their rates for Priceline customers, id. ¶¶ 30–33. Plaintiffs contend that this gave rise to a fiduciary relationship between Priceline and its customers that was breached when Priceline failed to disclose that it was paying hotels less than customers had bid for their reservations and "retain[ing] the difference as a secret profit on the transaction." Id. ¶¶ 22, 25. As further evidence of misrepresentation, plaintiffs point to after-the-fact confirmations advising them that their bids were accepted by the hotels, rather than by Priceline.

C.     Motion To Dismiss

Defendants filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). Granting the motion, the district court ruled that plaintiffs' fiduciary claim failed because Priceline did not act as travel agent and was not otherwise a fiduciary of users of its Name Your Own Price service: "Priceline only provides a hotel reservation at a consumer's specified price[,] . . . a single arm's length transaction that is not characterized by a relationship of trust that more extensive arrangements and planning with a travel agent would entail." Johnson v. Priceline.com, Inc., No. 3:11-cv-465 (JBA), 2012 WL 1108116, at *3 (D. Conn. Mar. 30, 2012). Moreover, because plaintiffs "tied their breach of contract claim to their breach of fiduciary [duty] claim," the contract claim failed for the same reason. Id. at *4. Finally, the district court dismissed plaintiffs' CUTPA claim because their "allegations

6

demonstrate nothing more than a transaction in which Priceline sold to them what they asked for, and what was advertised." Id. at *5.

This timely appeal followed.

**II.    Discussion**

A.    Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). We review de novo a dismissal for failure to state a claim, accepting as true all material factual allegations in the complaint and drawing all reasonable inferences in plaintiffs' favor. See Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 210 (2d Cir. 2012). The same deference does not extend, however, to pleaded legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Here, the viability of plaintiffs' complaint hinges on a question of law, specifically, Priceline's purported status as a fiduciary based on its alleged agency relationship with its customers. While the existence of an agency relationship often turns on questions of fact, the issue is properly resolved as a matter of law where, as here, the relevant facts are uncontroverted. See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 71 (2d Cir. 2012) (stating that "existence and scope of an agency relationship can be resolved as a matter of law" where "facts are undisputed" or "there is but one way for a reasonable jury to interpret them").

7

On appeal, as before the district court, the parties cite indiscriminately to the law of both Connecticut (Priceline's headquarters) and Illinois (plaintiffs' residence) in arguing the question of agency relationship. In granting dismissal, the district court relied primarily on Connecticut law, explaining that the parties had "agree[d] that the laws of Connecticut and Illinois are the same with respect to breach of fiduciary duty." Johnson v. Priceline.com, Inc., 2012 WL 1108116, at *3 n.2. Plaintiffs, who base their fiduciary claim on traditional agency principles common to both jurisdictions, do not contend otherwise on this appeal and, thus, we too rely mainly on Connecticut law in addressing the merits of their claim, assuming as the parties do that Illinois law warrants no different conclusion.[2]

---

[2] We previously have invoked "familiar concepts of common law tort liability to determine the rights of the parties" where, as here, the parties assumed that such "generally accepted" rules applied and cited cases from various jurisdictions without suggesting "any substantive differences . . . that would be outcome-determinative." Stanford v. Kuwait Airways Corp., 89 F.3d 117, 122 (2d Cir. 1996). Moreover, while courts are not bound by some types of legal conclusions agreed to by the parties, see, e.g., Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991), courts sitting in diversity may properly rely on the forum state's law where neither party asserts that another jurisdiction's law meaningfully differs, see Clarkson Co. v. Shaheen, 660 F.2d 506, 512 n.4 (2d Cir. 1981) (applying New York rather than Canadian law to breach-of-fiduciary-duty claims); see also Wood v. Mid-Valley Inc., 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of laws issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

Were the choice-of-law question at issue, we would look to the choice-of-law rules of Connecticut, the forum state for this diversity action. See IBM Corp.v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004). With respect to plaintiffs' contract claim, Priceline's User Agreement for online bookings expressly provides for Connecticut law to govern its performance, and Connecticut enforces such a choice-of-law provision so long as it bears a reasonable relationship to the dispute and was not procured by misrepresentation. See Elgar v. Elgar, 238 Conn. 839, 850–53 (1996). Insofar as Connecticut might not view the provision as necessarily applying to plaintiffs' fiduciary-based tort claim, see United States Fid. & Guar. Co. v. S.B. Phillips Co., 359 F. Supp. 2d 189, 205 (D. Conn. 2005), the state has nevertheless rejected the "place of injury rule" for resolving choice-of-law questions in

8

B.      Fiduciary Duty To Disclose

In Connecticut, "a failure to disclose can be deceptive only if, in light of all the circumstances, there is a duty to disclose." Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. 620, 635–36 (2002) (internal quotation marks and alterations omitted). Accordingly, "mere silence is not actionable in a transaction in which the parties deal at arm's length unless the circumstances or the existence of a confidential relationship gives rise to a duty to speak." Franchey v. Hannes, 152 Conn. 372, 378 (1965). Plaintiffs acknowledge that their claims against Priceline rise or fall with the presence or absence of such a duty. Purporting to locate a duty of disclosure in the parties' relationship, plaintiffs submit that because an agency relationship exists between Priceline and its customers with respect to every Name Your Own Price transaction, "fiduciary duties automatically apply by operation of law." Appellants' Reply Br. 2.

Accordingly, although the underlying issue in this case is whether Priceline was a fiduciary to plaintiffs, the particular question presented in this appeal is whether the complaint alleges facts showing an agency relationship.

Insofar as plaintiffs support their agency argument by reference to cases discussing the particular duties owed by travel agents to their customers, see Cicchiello v. Reney Plane Broker, Inc., No. CV 940460805S, 1996 WL 278348, at *2 (Conn. Super. Ct. May 3, 1996);

---

favor of the "significant relationship test," Jaiguay v. Vasquez, 287 Conn. 323, 350–51 (2008), which here seems to favor application of Connecticut law given that Priceline is headquartered in the state and its agreement with customers provides for disputes to be brought in a Connecticut state or federal court. See also Compl. ¶¶ 4–5 (alleging that defendant breached fiduciary duties owed under Connecticut law).

9

United Airlines, Inc. v. Lerner, 87 Ill. App. 3d 801, 804 (App. Ct. 1980), we conclude, as the district court did, that plaintiffs have failed to plead facts sufficient to cast Priceline as a travel agent, see Johnson v. Priceline.com, Inc., 2012 WL 1108116, at *3 (noting absence of any allegation by plaintiffs in this case "that Priceline promote[d] their travel plans, arrange[d] itineraries or travel schedules, or deal[t] with carriers"); see also United Airlines, Inc. v. Lerner, 87 Ill. App. 3d at 803 (identifying factors relevant to travel agent status, including that service provider "deals with carriers, plans an itinerary, arranges for hotel accommodations, guides and tours of each city and sets up the traveler's schedule"). Thus, we look to general principles of agency law to resolve this appeal.

For guidance on agency law, Connecticut has adopted the Second Restatement of Agency ("Second Restatement"). See, e.g., Wesley v. Schaller Subaru, Inc., 277 Conn. 526, 543–44 (2006); Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. at 639 n.12; Beckenstein v. Potter & Carrier, Inc., 191 Conn. 120, 132–34 (1983). Section 1 of that Restatement defines agency as "'the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" Wesley v. Schaller Subaru, Inc., 277 Conn. at 543 (quoting Second Restatement § 1 (1958)).[3] The three elements necessary to an agency

---

[3] To the extent plaintiffs cite § 1.01 of the Third Restatement of Agency ("Third Restatement"), which defines agency in terms of an express or implied understanding between the parties "that the agent shall act on the principal's behalf and subject to the principal's control," Third Restatement § 1.01 (2006), this definition is materially similar to that appearing in § 1 of the Second Restatement, the provision expressly adopted by Connecticut, and we do not distinguish between the two.

relationship are "(1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Id. (emphasis added); see also Beckenstein v. Potter & Carrier, Inc., 191 Conn. at 134 (noting critical feature of principal's "right to control the day-to-day work of the alleged agent" (citing Second Restatement § 14)).[4]

Where these elements are satisfied, "[a]n agent is a fiduciary with respect to matters within the scope of his agency." Second Restatement § 13. Two of the fiduciary duties owed by an agent to his principal are pertinent here. First, an agent owes a duty of disclosure, specifically, a "duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and [that] the principal would desire to have." Id. § 381. Second, an agent owes a duty to account for all profits arising out of the agent's employment that do not form part of his agreed-upon compensation. Thus, an agent who derives an undisclosed "profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal." Id. § 388. Such duties have their origin in the realization that, while the principal retains the right to control his agent's actions, the agent cannot be supervised at all times. See Robert H. Sitkoff, The Economic Structure of Fiduciary Law, 91 B.U. L. Rev. 1039, 1040 (2011) (noting "imperfectly

---

[4] At the same time that Connecticut relies on these Second Restatement elements to identify agency, it has declined "to define a fiduciary relationship in precise detail and in such a manner as to exclude new situations." Alaimo v. Royer, 188 Conn. 36, 41 (1982) (internal quotation marks omitted).

observable discretionary actions" by agent that affect principal). In short, the principal places "trust or confidence" in the agent to achieve the agency's objectives, Town & Country House & Homes Serv., Inc. v. Evans, 150 Conn. 314, 317 (1963); in return, the law requires the agent to keep the principal reasonably informed about matters germane to the agency, both to forestall misconduct by the agent and to allow the principal to make informed decisions.

These principles led the Supreme Court of Connecticut to reject a fiduciary-based claim in Macomber v. Travelers Property & Casualty Corp., 261 Conn. 620, a decision that is instructive here. In Macomber, an insurance company obligated itself, as part of a settlement agreement, to procure annuities for the plaintiff at a predetermined price and payout. In fact, the company secured the annuities at a discount. Connecticut rejected a claim of fiduciary breach based on the insurer's failure to disclose this fact to the plaintiff, holding that the circumstances demonstrated the parties to have only a "contractual relationship" whereby the insurer "agreed to procure an annuity at a certain cost and worth a certain value." Id. at 640. Although this contractual relationship imposed a "duty to act in accordance with the terms of the settlements, it was not marked by the unique degree of trust and confidence typically characteristic of a fiduciary relationship." Id. at 640–41 (internal quotation marks omitted). Significant to the court's reaching this conclusion was the fact that plaintiffs had "retained no authority over the manner in which the annuities would be procured." Id. at 639 n.12.

So it is in this case. Once Priceline accepts a customer's bid, it is contractually obligated to provide the desired accommodations at the stated sum. After submitting the bid, however, the customer retains no authority over the manner in—or price for—which the reservation will be procured. See id. Thus, neither the bid nor its acceptance gives rise to a fiduciary duty of disclosure.

Plaintiffs maintain that here, unlike in Macomber, agency is evident from the fact that Priceline customers exercise control over four important elements of every Name Your Own Price transaction, i.e., reservation date, location, hotel quality, and bid price. True enough, but what the argument overlooks is that once a customer makes these choices, he retains no right of interim control over Priceline's procurement of the desired reservation, and that right of control is what distinguishes an agency relationship from a mere contractual one. As comment f to § 1.01 of the Third Restatement in pertinent part explains:

> The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents. In many agreements to provide services, the agreement between the service provider and the recipient specifies terms and conditions creating contractual obligations that, if enforceable, prescribe or delimit the choices that the service provider has the right to make. . . . The fact that such an agreement imposes constraints on the service provider does not mean that the service recipient has an interim right to give instructions to the provider.

Third Restatement § 1.01 cmt. f; see also id. cmt. g ("Performing a duty created by contract may well benefit the other party but the performance is that of an agent only if the elements of agency are present.").

13

A Name Your Own Price customer retains no right to instruct Priceline as to how it procures hotel reservations beyond the initial specifications. To the contrary, after the customer thus "delimit[s] the choices that the service provider has the right to make," id. cmt. f, he cedes all other control over the reservation process to Priceline. This includes the amount Priceline itself pays the hotel in order to provide the customer with the desired reservation at his bid price.

Moreover, as a practical matter, there is no "interim" between the placement of the customer's bid and its acceptance or rejection during which the customer could exert control over Priceline. The electronic transaction is nearly instantaneous. In effecting that transaction, Priceline's actions are akin to those of an intermediary or middleman rifling through its inventory of discounted hotel rooms until it locates an item for which the customer has stated a willingness to pay a specified price. The fact that only Priceline has access to both its algorithm and its particular inventory of discounted hotel rooms does not create a fiduciary relationship with a customer where none otherwise exists. See Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 42 (2000) (holding that "technical expertise" or "[s]uperior skill and knowledge alone do not create a fiduciary duty among parties involved in a business transaction").

No different conclusion regarding agency is warranted by promotional advertising in which an actor appears to negotiate discounted hotel rates for Priceline customers. Nothing in the advertisements implies that customers retain control over this negotiation process, as would be necessary for the relationship to give rise to agency duties. Nor do confirmation

emails stating or implying that a particular hotel has accepted consumers' bids retroactively impose fiduciary duties on Priceline in securing those reservations, especially in light of pre-bid disclosures to consumers about what they can expect "[i]f Priceline accepts your price." Priceline.com website disclosure, "Important Information," J.A. 163 (emphasis added).

Plaintiffs submit that Priceline's fiduciary status with respect to its Name Your Own Price customers becomes evident by analogy to an agent retained to sell or purchase real estate. They argue that such an agent cannot, for example, consistent with his fiduciary duty to the purchaser, accept an offer for less than the property's listed price but fail to reveal that lower price to the purchaser, keeping the difference between the listed price and the sum actually remitted as an undisclosed profit. The analogy is inapt. A real estate vendor or purchaser retains control over whether to accept an offer received by his agent, a circumstance that imposes a duty on the agent to convey the offer correctly. By contrast, once a Name Your Own Price customer states his hotel preferences and submits his bid, they are irrevocable. He retains no control over the procurement process that would give rise to a duty by Priceline to convey any further information between the moment the offer is submitted and the moment Priceline reports whether the offer was accepted.

This distinction finds support both in commentary to the Second Restatement, see Second Restatement § 381 cmt. a (describing agent's duty to disclose higher purchase offer "[u]nless he has reason to believe that his employer desires to sell at a fixed price to the particular person, or unless he is to receive as commission all above a fixed price"), as well

15

as decisional law recognizing a real estate agent's default duty to "negotiate an optimal purchase price" for the buyer, Rivkin v. Century 21 Teran Realty LLC, 10 N.Y.3d 344, 356, 858 N.Y.S.2d 55 (2008). Like the property vendor in the Restatement example, Name Your Own Price consumers commit to pay "a fixed price" for accommodations meeting their non-negotiable preferences. They do not task Priceline with securing a better price or with "mak[ing] prudent choices on their behalf in order to attain the greatest value for their money." Macomber v. Travelers Prop. & Cas. Corp., 261 Conn. at 641 (listing identified duty among "hallmarks" of fiduciary relationship).[5]

More helpful than plaintiffs' real estate analogy to resolving this case is the auction comparison urged by amicus curiae New England Legal Foundation and employed by the Delaware Superior Court in dismissing breach of contract claims against Priceline based in part on the same allegedly undisclosed markup at issue here:

> [T]he consumers who use this service realize[] that this is a bidding process just as if they had walked into an auction house to bid on a piece of art. They do not expect in an auction house to ever be told what the piece of art may have cost the seller prior to them buying it or the profit that the seller would make from the bidding process, and the same is true for the [Name Your Own Price] transaction.

Marshall v. Priceline.com Inc., C.A. No. 05C-02-195 (WCC), 2010 WL 1068197, at *6 (Del. Super. Ct. 2010), aff'd, 7 A.3d 485 (Del. 2010) (unpublished table decision). Plaintiffs do

---

[5] Although the descriptions of the Name Your Own Price service on Priceline's website have varied since this lawsuit's inception, the disclosures typically state that a consumer dictates "the price you want to pay for your hotel room," Priceline.com website disclosure, "Name Your Own Price®," J.A. 160 (emphasis added), rather than "the maximum price" or "an acceptable price."

not suggest that an auctioneer in Connecticut has a fiduciary duty to prospective buyers to mitigate their overbidding. Cf. Mystic Color Lab, Inc. v. Auctions Worldwide, LLC, 284 Conn. 408, 416 (2007) (declining to decide circumstances under which auctioneer might have fiduciary duty to seller).

In sum, when a Name Your Own Price customer places an irrevocable bid for a hotel room satisfying certain specifications, he surrenders all control over how Priceline fulfills that bid and, thus, has no agency-based fiduciary claim against Priceline for failing to disclose that it has fulfilled the bid at a lower cost to itself. The parties' relationship is contractual and, so long as the customer receives the benefit of the bargain sought in his bid, the profit generated by Priceline should be of no concern. See Marshall v. Priceline.com Inc., 2010 WL 1068197, at *6.

## III. Conclusion

To summarize, because plaintiffs have failed as a matter of law to allege an agency relationship between Priceline.com and consumers who use its "Name Your Own Price" service to reserve hotel accommodations, they cannot plausibly claim that Priceline breached an agent's fiduciary duty in failing to apprise consumers that it might have procured the accommodations at costs lower than their bids, retaining the difference as profit.

The judgment of dismissal is AFFIRMED.

17