19-2755-cv
*ABM Indus. Groups, LLC v. Int'l Union of Operating Eng'rs, et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2019

(Submitted: June 25, 2020    Decided: July 29, 2020)
Docket No. 19-2755-cv

———————————

ABM INDUSTRY GROUPS, LLC,

*Petitioner-Appellant,*

*- against -*

INTERNATIONAL UNION OF OPERATING ENGINEERS,
LOCAL 30, 30A, 30B, AFL-CIO,

*Respondent-Appellee.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————

Before:
        WINTER, CALABRESI, and CHIN, *Circuit Judges*.

———————————

Appeal from a judgment of the United States District Court for the

Southern District of New York (Woods, *J.*) denying petitioner-appellant's motion

to confirm and granting in part respondent-appellee's motion to vacate an

arbitration award, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Petitioner-appellant contends that the district court erred in denying its motion to confirm the arbitration award.

REVERSED AND REMANDED.

HARRY M. WEINBERG, Law Offices of Harry Weinberg, Esq., *and* ROBERT S. SCHWARTZ, Law Office of Robert S. Schwartz, PLLC, New York, New York, *for Petitioner-Appellant.*

JAMES M. STEINBERG, Brady McGuire & Steinberg P.C., Tarrytown, New York, *for Respondent-Appellees.*

PER CURIAM:

Petitioner-appellant ABM Industry Groups, LLC ("ABM") appeals the district court's judgment, entered August 5, 2019, denying its motion to confirm an arbitration award and granting in part the motion of respondent-appellee International Union of Operating Engineers, Local 30, 30A, 30B, AFL-CIO ("Local 30" or the "Union") to vacate the award, pursuant to Section 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185.  On appeal, ABM principally argues that the district court erred in denying its motion to confirm the arbitration award.

2

ABM provided building maintenance and janitorial services to a commercial office building in Tarrytown, New York (the "property"). ABM employed engineers who worked at the property and were represented by Local 30. ABM and Local 30 were parties to a collective bargaining agreement (the "CBA") that was in effect from January 1, 2015 through December 31, 2017, which covered the terms and conditions of employment for the Local 30 employees working at the property. On or about March 9, 2017, the property was sold, and ABM was informed that the new owner would no longer employ the existing employees, including John Phillip and Eugene Clerkin, who were members of Local 30. On April 6, 2017, ABM paid Phillip and Clerkin termination pay and accrued vacation and sick pay, pursuant to the CBA. Unbeknownst to ABM, Phillip and Clerkin were rehired by the new owner of the property and continued their same job duties.

On July 28, 2017, Local 30 filed a grievance against ABM under the CBA on behalf of Phillip and Clerkin, alleging that the two employees were not paid all accrued vacation credits. During this dispute, ABM learned that Phillip and Clerkin remained employed at the property, and sent them a written demand seeking the return of the termination and certain accrued vacation pay.

3

Specifically, on August 22, 2017, ABM directly contacted Phillip and Clerkin to advise them of the "inadvertent wage overpayment" and provided them "options for repayment." *See* J. App'x at 200-01 (letter to Phillip); 197-98 (letter to Clerkin). On August 29, 2017, on behalf of Phillip and Clerkin, Local 30 responded to ABM to "disagree[] with ABM's characterization of the payments made to [Local 30] members and dispute[] that any funds are owed to ABM." J. App'x at 199. Local 30 argued that the two employees were "actually owed funds under the terms of the [CBA]." J. App'x at 199. Pursuant to the CBA's grievance procedure, Local 30 and ABM agreed to arbitrate Local 30's grievances regarding the two employees' vacation credits and ABM's claim to claw back the termination pay.

The arbitration hearing was held on April 4, 2018, with representatives for Local 30 and ABM present. Although Phillip and Clerkin were not present, they were the designated "Grievants" and were represented by Local 30's counsel at the arbitration. The parties submitted a number of issues to the arbitrator, including the following: "Do the Grievants, Mr. Clerkin and Mr. Phillip, owe ABM reimbursement for termination pay already paid to each of them?" J. App'x at 32.

After the arbitration, Local 30's counsel submitted a letter brief on behalf of Phillip and Clerkin, advancing several arguments as to why the employees were entitled to additional hours in accrued vacation, additional pay under the CBA, and remittance of benefit contributions. Counsel also addressed ABM's reimbursement claim on the merits, and did not argue that the arbitrator lacked jurisdiction to decide the claim.

The arbitrator issued an opinion and award on October 12, 2018 (the "Award"), concluding that Phillip and Clerkin were not entitled to termination pay and directing them to repay certain amounts to ABM.

On November 18, 2018, ABM commenced the instant action by filing a petition to confirm the Award. ABM moved for summary judgment confirming the Award on January 16, 2019. Local 30 opposed the motion and cross-moved for summary judgment to vacate the Award or, in the alternative, to dismiss ABM's petition. The district court issued a memorandum opinion and order on August 5, 2019, denying ABM's motion to confirm the Award and vacating in part the Award, after concluding that the Award was "*ultra vires* and unenforceable to the extent that it imposes obligations on non-parties [Phillip

and Clerkin] to the [CBA]." J. App'x at 263. Judgment entered August 5, 2019.

This appeal followed.

## *DISCUSSION*

"We review a district court's decision to confirm or vacate an arbitration award *de novo* on questions of law and for clear error on findings of fact." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). Our authority to review a labor arbitration award is "narrowly circumscribed and highly deferential." *Id.* at 532. We may not "review the arbitrator's decision on the merits," but "inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* at 536. "We review a determination of an agency relationship *de novo*." *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999).

## I.    *Applicable Law*

Arbitration is a "creature of contract," *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019); thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Nonetheless, this

6

Court has recognized five "limited theories" where non-signatories may be bound by arbitration agreements entered into by others. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776, 780 (2d Cir. 1995) (enumerating five circumstances binding non-signatories: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter-ego; and 5) estoppel"). "Traditional principles of agency law may bind a nonsignatory to an arbitration agreement." *Id.* at 777. "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Merill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 130 (2d Cir. 2003) (quoting Restatement (Second) of Agency § 1 (1958)).

In the labor law context, of course, a labor union is the exclusive agent for its members. The National Labor Relations Act (the "NLRA") provides that the labor union is the exclusive representative, or agent, of employees in collective bargaining. *See* 29 U.S.C. § 159(a) ("Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective

bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment."); *see also* 29 U.S.C. § 158(a)(5) ("It shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with *the representatives* of his employees." (emphasis added)). Importantly, the resolution of disputes that arise under a CBA through grievance procedures is an essential part of collective bargaining. 29 U.S.C. § 158(d) ("[T]o bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, *or any question arising thereunder*." (emphasis added)).

## II.   *Application*

In denying ABM's petition to confirm the Award, the district court reasoned that no precedent or authority supported the proposition "that a union can bind its members to make payments ordered by an arbitrator under an arbitration agreement to which they were not signatories, following a process in which they did not participate." J. App'x at 261. The district court plainly erred, for the record is clear that Phillip and Clerkin did participate in the arbitration

8

proceeding -- they were the Grievants who initiated the proceeding -- and the Union possessed both agency and statutory authority to appear in the arbitration on their behalf.[1] We conclude that the arbitrator did not exceed her authority because under both agency law principles and federal labor law, the Union possessed the authority to bind Phillip and Clerkin to the Award.

A. *Agency Law*

As this Court has explained, "[a]ctual authority is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all circumstances attending those manifestations, including the customs of business, the subject matter, any formal agreement between the parties, and the facts of which both parties are aware." *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010) (quoting *Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997)). Here, Phillip and Clerkin directly manifested their intent to be represented by Local 30 and to be bound by the Award by authorizing the Union to submit their claims for unpaid accrued vacation credits to arbitration. After ABM made its

---

[1] "While the existence of an agency relationship often turns on questions of fact, the issue is properly resolved as a matter of law where, as here, the relevant facts are uncontroverted." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013).

overpayment claim, the parties stipulated to the submission of ABM's claim for reimbursement from Phillip and Clerkin to the arbitrator. Counsel for Phillip and Clerkin addressed the issue on the merits, urging the arbitrator to reject ABM's claim for reimbursement on the grounds that the two employees were entitled to termination pay under the CBA. The arbitrator resolved this stipulated issue by concluding that termination pay was not owed to the two employees, and directing them to pay ABM the amounts erroneously disbursed.[2] Accordingly, the district court erred in vacating the arbitration award in part and concluding that the award was "*ultra vires* and unenforceable to the extent that it imposes obligations on non-parties to the agreement." J. App'x at 263.

**B.    *Federal Labor Law***

As discussed above, federal labor law confirms that when a union prosecutes employees' grievances against an employer, it represents those employees and those employees are therefore bound by the arbitral award. *See* 29 U.S.C. § 158(d). This basic truth has long been reflected in precedent. *See Humphrey v. Moore*, 375 U.S. 335, 342 (1964) ("the union [i]s [the] exclusive

---

[2]    Because we conclude that the record contains sufficient evidence to support an agency relationship between Local 30 and the employees, we need not address the other grounds for binding non-signatories to a contract signed by others. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d at 776.

10

bargaining agent in the negotiation *and administration* of a collective bargaining contract" (emphasis added)); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960) ("[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government . . . . The grievance procedure is, in other words, a part of the continuous collective bargaining process.").

Precedent also makes clear that employees are bound by arbitration decisions and settlements of grievances by union representatives. "[S]ettlement of a grievance by the union and the employer is binding upon the individual employee, absent evidence that the union has acted in bad faith in carrying out its duty of full and fair representation." *Suissa v. Am. Exp. Lines, Inc.*, 507 F.2d 1343, 1347 (2d Cir. 1974). Other courts have similarly concluded that "an employee may not attack a final arbitration decision, . . . except on the grounds of fraud, deceit or breach of the duty of fair representation unless the grievance was a sham, substantially inadequate or substantially unavailable." *Margetta v. Pam Pam Corp.*, 501 F.2d 179, 180 (9th Cir. 1974) (internal quotation marks omitted).

The district court ignored that Local 30 pursued the employees' grievance as their "exclusive representative," thus binding them to the outcome.

11

The CBA expressly contemplates that Local 30 will prosecute employees'

interests as their representative against ABM.  The preamble to the CBA makes

this explicit:

> The parties hereto being desirous of reducing to writing
> the Agreement arrived at as a result of collective
> bargaining between them, *the Union representing a*
> *majority of employees* as hereinafter described, and
> further, *the Union by reason thereof, being the exclusive*
> *bargaining agent for such employees*, do agree as and for
> their Agreement as follows.

App'x at 14 (emphasis added).  Article 11, which provides an arbitral grievance

procedure for all questions arising under the CBA, is no different, as it also calls

for Local 30 to arbitrate employees' grievances through arbitration.

The intent of the parties here was clearly for employees' grievances

to be submitted to arbitration and for employees to be bound by the arbitrator's

decision.  An arbitrator's scope of authority "'generally depends on the intention

of the parties to an arbitration, and is determined by the agreement or

submission.'"  *Local Union No. 38 v. Hollywood Heating & Cooling, Inc.*, 88 F. Supp.

2d 246, 252 (S.D.N.Y. 2000) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d

Cir. 1987)).  Because the parties' intent as revealed throughout the CBA was for

12

Local 30 to represent employees' interests, Local 30 cannot now claim that the employees were not bound by the CBA or the arbitration.

To be sure, as described above, the record contains numerous instances demonstrating the employees' intent to be bound by Local 30 in the arbitration. For example, in a September 2018 letter to the arbitrator, union counsel represented that "[o]ur office represents Grievants [Local 30] *and Local 30 members John Philip and Eugene Clerkin* in connection with the above- referenced matter." App'x at 158 (emphasis added). In the same letter, counsel stated: "We respectfully submit that the following amounts are owed by ABM to the Local 30 Trust Funds *on behalf of the grievants*." App'x at 162 (emphasis added). Throughout the letter and the parties' Joint Statement of Stipulated Facts for arbitration, counsel referred to the employees as "the grievants," undercutting their argument on appeal -- and the district court's conclusion -- that only Local 30 was bound by the grievance procedure and a party to the arbitration. *See, e.g.*, App'x at 163, 174. And finally, union counsel even sent a letter cautioning ABM from contacting the employees directly because their interests were being prosecuted by Local 30. Based on this extensive record evidence, Local 30 cannot

13

now move to vacate the Award on the ground that the employees were not party to the CBA and to the arbitration.

It is, of course, true that Phillip and Clerkin were not signatories to the CBA and the agreement to arbitrate. But it is the nature of labor agreements and labor arbitrations that the unions are the exclusive bargaining agents for and the agents of the union members. *See generally Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 223 (2d Cir. 2019) (a "Union [is] legally authorized to negotiate collective bargaining agreements on [an employee's] behalf" (citing 29 U.S.C. § 159(a))). Under the CBA, Local 30 was the "sole collective bargaining agency" for the covered employees, J. App'x at 14, and the CBA provided for vacation, holiday, sick, and termination pay, J. App'x at 18-21. Disputes in connection with the interpretation and application of these provisions were to be resolved through a grievance procedure, including arbitration, with the Union representing the employees. That was precisely the procedure that was followed here when Phillip and Clerkin initiated -- and participated in -- the grievance process. For these reasons, under both agency and statutory law principles, we have little trouble concluding that Local 30 possessed the requisite authority to bind the employees to the Award.

## *CONCLUSION*

For the reasons set forth above, the district court's judgment is

**REVERSED** and the case is **REMANDED** with instructions to the district court

to grant ABM's petition to confirm the Award, to deny Local 30's cross-motion to

vacate the Award, and to enter an amended judgment accordingly.