*Bens BBQ v. Suffolk Cty*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand twenty-one.

PRESENT:    Guido Calabresi,
            Barrington D. Parker,
            Steven J. Menashi,
                    *Circuit Judges.*

_____

Bens BBQ, Inc.,

      *Plaintiff-Appellant*,

     v.                                                          No. 20-3254

County of Suffolk,

      *Defendant-Appellee.*[*]

_____

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

*For Plaintiff-Appellant*:               Christopher A. Bianco, Egan & Golden, LLP, Patchogue, New York.

*For Defendant-Appellee*:               Michael J. Petre, Assistant County Attorney, Suffolk County Department of Law, Hauppauge, New York.

Appeal from a judgment of the United States District Court for Eastern District of New York (Feuerstein, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Bens BBQ, Inc. ("Bens") appeals from the final judgment of the district court dismissing its suit against Defendant-Appellee Suffolk County (the "County") concluding, *inter alia*,[1] that the County's False Alarm Law did not violate the due process rights of Suffolk County alarm owners, did not effectuate an unlawful taking under the Fifth Amendment, and did not violate New York state law. We affirm the judgment of the district court. We assume the parties'

---

[1] Bens voluntarily withdrew its claim under the Eighth Amendment and the associated claim for a declaratory judgment. Bens also does not pursue its claim under 42 U.S.C. § 1985 on appeal.

2

familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I**

The Fire Alarm Law imposes fees on alarm owners for alarm triggers that the Suffolk County Police District ("SCPD") deems "false alarms," a category that includes alarms resulting from "mechanical failure, accidental tripping, misoperation, malfunction, misuse or neglect of the alarm system, but shall not include alarms caused by earthquakes, high winds, verifiable utility failures or external causes beyond the control of the alarm owner or alarms caused by smoke, fire or carbon monoxide." Suffolk Cty. Adm. Code § 290-6. Fines for false alarms range from $100 (for the first false alarm or third false alarm for non-permit holders and permit holders, respectively) to $500 (for the tenth and subsequent false alarms).

When there is a false alarm, the SCPD sends a letter to the alarm owner asking for payment. Alarm owners may appeal the fine through a written appeal to the SCPD. Bens alleged that the SCPD is the sole arbiter of what constitutes a "false alarm," and that there is no hearing or proceeding in which an alarm owner

3

can enter a plea of not guilty, submit testimony or evidence, appear before an impartial judge, or cross examine witnesses.

Bens received notice from SCPD seeking payment in the amount of $1,410.00 for false alarms occurring on September 11, 2016, September 14, 2016, October 17, 2016, and November 19, 2016. Bens submitted a written appeal and alleges that it did not receive a response from the SCPD. The County commenced a small claims action against Bens to collect the fines. The small claims court awarded the County $1,710.00 because Bens had not paid the fine.

Bens commenced a putative class action on June 18, 2019, against the County asserting claims pursuant to 42 U.S.C. §§ 1983 and 1985 alleging that the False Alarm Law authorizes the County to impose fines on alarm owners without giving them recourse to challenge the County's determination in violation of the Due Process Clause of the Fourteenth Amendment, the Eighth Amendment's prohibition on excessive fines, the Takings Clause of the Fifth Amendment, and New York State law. The district court dismissed all but the Eighth Amendment claim, which Bens subsequently withdrew voluntarily.

Bens timely appealed the district court's dismissal of its Fourteenth Amendment, Fifth Amendment, and New York State law claims.

## II

We "review *de novo* a dismissal for failure to state a claim, accepting as true all material factual allegations in the complaint and drawing all reasonable inferences in plaintiff['s] favor." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013). "To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

Because there is no dispute that the challenged conduct was "committed by a person acting under color of state law," the question on appeal is whether Bens has adequately alleged a violation of a federal constitutional right. *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). We conclude Bens has not.

## A

Bens first argues that the False Alarm Law violates its procedural due process rights under *Mathews v. Eldridge*, 424 U.S. 319 (1976), because the law fails to provide alarm owners a pre-deprivation oral hearing. We disagree.

The Due Process Clause of the Fourteenth Amendment provides that "no State shall … deprive any person of life, liberty, or property, without due process of law." U.S. Const, amend. XIV. "[D]ue process is flexible and calls for such

5

procedural protections as the particular situation demands." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). *Mathews* sets forth the "test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due." *Nnebe*, 644 F.3d at 158. "The general rule is that a pre-deprivation hearing is required but the *Mathews* inquiry provides guidance in determining whether to tolerate an exception to the rule requiring pre-deprivation notice and hearing." *Id.* (internal quotation marks and citation omitted). To determine when a pre- or post-deprivation hearing is required, *Mathews* requires the balancing of (1) the private interest, (2) the risk of erroneous deprivation, and (3) the government's interest. 424 U.S. at 335.

*Mathews* does not require that the False Alarm Law provide a pre-deprivation hearing to alarm owners beyond the written appeals process that it already provides. The first *Mathews* factor does not weigh in favor of a pre-deprivation oral hearing because, here, the private interest at stake is limited. While the $1,410 total fine levied against Bens is not trivial, it is the sum of four separate fines for four separate false alarm incidents. The fine for each incident ranges from only $100 to $500 per incident, which is not overly burdensome for a

non-residential business owner. Indeed, for permit holders, the first two false alarms would not even have resulted in fines.

Meanwhile, the County has a strong interest in regulating false alarms, which Bens does not dispute. False alarms cost law enforcement and other first responders time and money. Disincentivizing false alarms allows law enforcement resources to be channeled toward actual emergencies.

Finally, the risk of erroneous deprivation is not so high as to require additional pre-deprivation procedures. For permit holders, the first two false alarms would have elicited written warnings which would have provided sufficient notice of the written appeals process before a single fine was levied. Even for non-permit holders, for whom the first incident results in a fine, the availability of a written appeals process mitigates the risk of erroneous deprivation because the process requires the County to consider an alarm owner's objections before collecting the fine.

Bens acknowledges the availability of an Article 78 proceeding in addition to the False Alarm Law's written appeal procedure, which would have allowed Bens to seek a state court's review of the County's decision. *See* N.Y. C.P.L.R. 7801;

*Krimstock v. Kelly*, 306 F.3d 40, 59 (2d Cir. 2002). If Bens believed that the written appeals process did not provide a sufficient opportunity to submit evidence, Bens could have brought a special Article 78 proceeding in which it would have had a hearing and presented evidence. *Id.* We need not decide whether the availability of an Article 78 proceeding, standing alone, would be sufficient to comply with the Due Process Clause where the amount in controversy is low compared with the expense and complexity of such a proceeding. *See Luedeke v. Village of New Paltz*, 63 F. Supp. 2d 215, 222-23 (N.D.N.Y. 1999) (concluding that "[t]he mere availability of [an Article 78 proceeding] does not comport with due process's guarantee of a meaningful opportunity to be heard"). In the circumstances of this case, the written appeal process in addition to the availability of the Article 78 proceeding reduces the risk of erroneous deprivation such that the *Mathews* test does not require additional procedures.

Bens alleges that the SCPD did not respond to his written appeal.[2] Yet Bens does not argue that the County has a policy of not responding to such appeals.

---

[2] The County claims that it did respond to the appeal. *See* Appellee's Br. 4. In resolving the motion to dismiss, however, the district court did not rely on the County's response. We do not either.

8

Nor, in pressing his facial challenge to the False Alarm Law, does Bens argue that the County's actions in his particular case render its conduct unconstitutional as applied. Accordingly, we do not consider that argument here.

Instead, Bens relies on *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), and *Nelson v. Colorado*, 137 S. Ct. 1249 (2017), for the proposition that a written appeal in lieu of a live hearing is insufficient. That reliance is misplaced. Both *Krimstock* and *Nelson* address post-deprivation procedures. Here, however, the alarm owner need not pay the fine until the written appeals process is completed. Second, the *Mathews* analysis in those cases was different from the one here. *See Krimstock*, 306 F.3d at 63-64 (noting that the risk of erroneous deprivation was "substantial" and that post-deprivation proceedings could occur so long after the deprivation that the erroneous deprivation of the plaintiff's vehicle could not be recompensed); *Nelson*, 137 S. Ct. at 1258 (concluding that the private interest and risk of erroneous deprivation were substantial and that "the State has shown no countervailing interests in retaining the amounts in question"). Neither deprivation is comparable to the fines here.

Accordingly, we conclude that the False Alarm Law does not violate the constitutional right to procedural due process.

**B**

Bens next argues that the false alarm fees constitute a taking under the Fifth Amendment. The Takings Clause of the Fifth Amendment guarantees that "private property [shall not] be taken for public use, without just compensation." U.S. Const., Amend. V. This protection applies to states through the Fourteenth Amendment. *Weaver v. Brenner*, 40 F.3d 527, 534 (2d Cir. 1994).

Bens does not argue that it should be compensated for the fine but rather that "the false alarm fee scheme has had a negative impact on [alarm owners] and drastically altered the reasonable investment-backed expectations they had when purchasing their alarm systems to protect their homes and businesses." J. App'x 16. The claim, therefore, is that the County has effectuated a regulatory taking by reducing the value of its alarm system. A regulatory taking occurs when "state regulation goes too far and in essence effects a taking." *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014) (internal quotation marks omitted). "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Id.* (internal quotation marks omitted).

"The *Penn Central* analysis of a non-categorical taking 'requires an intensive ad hoc inquiry into the circumstances of each particular case.'" *Id.* at 564. Accordingly, "[w]e weigh three factors to determine whether the interference with property rises to the level of a taking: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* (internal quotations and citation omitted).

The false alarm fines for non-residential alarm owners range from $100 to $500 and are not so high as to have a severe economic impact on a business establishment. The False Alarm Law does not require alarm owners to disable the alarm or to remove the alarm after a false alarm. Law enforcement does not stop responding to alarms from a particular establishment if it has responded to a false alarm at that establishment in the past. The investment-backed expectation—that the alarm system protects its establishment in the event of an emergency—has not been frustrated. Because the False Alarm Law aims to preserve law enforcement resources for true emergencies rather than false alarms, the cost associated with false alarm fines would be an expected cost of maintaining an alarm system that

11

calls for law enforcement to respond rather than a departure from the expectations a business would have when investing in such an alarm system.

Finally, Bens argues that the False Alarm Law was enacted only as a means for generating revenue. While the False Alarm Law does generate revenue, it is also rationally related to the legitimate purpose of preserving scarce law enforcement resources. Considering the *Penn Central* factors, therefore, we conclude that the False Alarm Law does not effectuate a regulatory taking under the Fifth and Fourteenth Amendments.

### C

Bens finally argues that the district court erred in dismissing its claim under New York law for "money had and received." *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Ass'n.*, 731 F.2d 112, 125 (2d Cir. 1984). A party asserting a claim for "money had and received" under New York law must show that "under principles of equity and good conscience, defendant should not be permitted to keep the money." *Id.*

Bens does not identify a principle of equity that would require the County to return the fees. To the extent that Bens argues that the false alarm fees do not bear a relationship to the cost of providing the governmental service, the argument

fails. The County's proffered reason for fining false alarms is rationally related to discouraging false alarms that waste scarce law enforcement resources.

\* \* \*

We have considered the appellant's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court